UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20628-CR-GRAHAM

UNITED STATES OF AMERICA,

    **Plaintiff,**

v.

**YAMILE SEGUROLA,**                 <u>**REPORT AND RECOMMENDATION**</u>

    **Defendant.**
_____/

On or about June 21, 2011, court-appointed defense counsel Orlando do Campo ("Counsel") submitted a voucher application numbered FLS 10 2309 with appended time sheets requesting $76,458.06 as final payment for attorney's fees and costs pursuant to the Criminal Justice Act (the "CJA"). Counsel also supplied detailed time sheets and a letter of explanation dated June 17, 2011 (the "Letter of Explanation") in support of his voucher application.

Defendant Yamile Segurola ("Defendant") was tried twice in this case. The first trial took place from February 16, 2010 to April 7, 2010. That trial lasted thirty-four (34) days. That trial ended in a mistrial for Defendant. **[See DE # 665]**. Counsel was already compensated for that work in a previous order of this Court. **[See DE # 964 & 971]**.

Defendant was retried and counsel now seeks compensation for time spent in this matter related to the second trial during the time period April 11, 2010 through December 2, 2010. Counsel seeks $76,458.06 in his application, an amount which exceeds the $9,700.00 statutory maximum allowed for representation in non-capital felony cases under the CJA. As a result, United States District Court Judge Donald L. Graham entered an Order of Reference **[DE # 1259]** referring the voucher application to the undersigned for a

Report and Recommendation as to whether the fees requested by Counsel are appropriate. See 28 U.S.C. § 636(a); see also United States District Court for the Southern District of Florida Magistrate Judge Rules.

## Criminal Justice Act and Guidelines for Administering the CJA and Related Statutes

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in the application of the provisions of the CJA. See In re Burger, 498 U.S. 233, 234, 111 S.Ct. 628 (1991). In the Guidelines, judges are "urged to compensate counsel at a rate and in an amount sufficient to cover appointed counsel's general office overhead and to ensure adequate compensation for representation provided." See Section §630.20 of the Guidelines.

The CJA at 18 U.S.C. §3006A(d)(1) provides that at the conclusion of CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." The district court, as the body empowered to "fix" CJA appointed counsel compensation, has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. §3006A(d)(5); U.S. v. Griggs, 240 F.3d 974 (11th Cir. 2001). In order for the recommended fee amount to exceed the statutory maximum, however, the district court *must* first certify that the case involves "complex" or "extended" representation. 18 U.S.C. §3006A(d)(3). Second, the district court must conclude that the amount is necessary to provide Counsel with fair compensation.

A case may be considered "complex" if the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case. *See* Section §230.23.40(b) of the Guidelines. A case may be considered "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. *Id.*

## DISCUSSION

### This Case Was Complex

Under the Guidelines, in order to compensate Counsel in an amount in excess of the statutory maximum, I must first find that the representation was either complex or extended. This case was complex for several reasons.

First, the very nature and number of charges involved in this case required Counsel to expend more time, skill and effort than normally required in the average case. This case commenced when the grand jury issued an Indictment **[DE # 3]** naming Defendant and "nineteen co-defendants, and when unindicted coconspirators are taken into account, the number of potential participants exceed[ed] two dozen." (Letter of Explanation at 1).

The original Indictment contained twenty (20) counts. The government alleged that Defendant and the codefendants were involved in a mortgage fraud conspiracy scheme to recruit straw buyers to purchase residential properties. The purpose of the scheme was to obtain money from various banks and lending institutions to finance the purchase of the properties through materially false representations and fraudulent pretenses concerning the true purchasers of the homes.

The scheme required the straw buyers to pose as home buyers when, in fact, the straw buyers were not to be either the true owners of the homes or responsible for making the monthly mortgage payments. Rather, other unnamed third persons were to be the true owners of the properties. In the scheme, the straw buyers would purchase the homes at highly inflated prices by obtaining mortgages on the properties. The true owners of the properties would fail to make payments on the mortgages and default on the loans. The various banks and lending institutions would be forced to foreclose on the properties, suffering large losses.

Moreover, "this was a complicated matter because the length and breadth of the fraud alleged by the indictment, as well as the number of individuals allegedly involved in that fraud. The government's main witness admitted to committing fraud from approximately 1999 until she was arrested in 2007 . . . . The events of the indictment span from 2005 through 2007." (Letter of Explanation at 1).

Originally, the government charged Defendant with conspiracy to commit mail and wire fraud, mail fraud and wire fraud. In the Superseding Indictment, the government charged Defendant with one count of conspiracy to commit mail and wire fraud and two counts of wire fraud. Defendant faced a maximum sentence of twenty (20) years imprisonment for the conspiracy charge and twenty (20) years imprisonment for each of the two wire fraud counts.

Second, the "discovery in this matter was voluminous, consisting of approximately 87,000 documents. The discovery included loan files, bank records and real estate documents. Not only was it a lengthy process to become familiar with these documents, but that task was made more difficult by the fact that there were admitted instances of forgery

committed in the processing of many of the documents turned over in discovery, which further necessitated comparing and contrasting documents as part of the process of preparing for trial." (Letter of Explanation at 1). The sheer volume of documents which Counsel had to review in order to effectively represent Defendant rendered this case more complex than the average case.

Third, the representation of Defendant required Counsel to attend a number of hearings and status conferences in this case. Counsel made appearances at two arraignment proceedings (6/4/10 and 6/7/10) and a number of status conferences (6/16/10, 8/11/10, 10/12/10 and 10/25/10).

Fourth, this case was more complex than the average case because Defendant entered a plea of not guilty and proceeded to trial for a second time. "The retrial in this matter resulted in a seven-week trial wherein 20-plus witnesses testified, and thousands of documents were introduced into evidence. Based on . . . counsel's recollection, more than a dozen banker's boxes of discovery were provided to the jury for its deliberations." (Letter of Explanation at 1). The jury found Defendant not guilty on all charges. **[See DE # 1103]**.

It is clear from the record that the legal and factual issues in this case were unusual. Consequently, I conclude that this matter required the expenditure of more time, skill and effort by Counsel than would normally be required in the average case. As I have concluded that the representation provided by Counsel was complex, I must review the voucher to determine the appropriate amount for which Counsel should be compensated in excess of the $9,700.00 statutory maximum.

## *Voucher Amount - Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy prior to my review. Counsel requested compensation for 420.4 in-court hours totaling $52,550.00. The CJA administrator changed the number of in-court hours to 149.8 and the total amount claimed for in-court hours to $18,725.00.

The CJA administrator also reviewed the 1885.0[1] out-of-court hours totaling $23,562.50 sought by Counsel. Counsel sought compensation for 72 hours for "Interviews and conferences" and 84.2 hours for "Obtaining and reviewing records." Counsel also sought compensation for 17.8 hours for "Legal research and brief writing" and 14.5 hours in "Travel Time." The CJA administrator made substantial changes to these numbers. The CJA administrator greatly increased the 84.2 hours Counsel sought for "Obtaining and reviewing records" to 354.8 hours. This changed the total number of out-of-court hours listed on the voucher to 459.1. The CJA administrator determined that the new total amount sought by Counsel for out-of-court hours was $57,387.50.

Counsel did not seek any amount for Travel Expenses. Counsel sought $345.56 in "Other Expenses," however. The CJA administrator reduced this amount to $314.56 and adjusted the total amount documented by Counsel in the voucher to $76,427.06 (from $76,458.06).

---

[1] A review of the voucher submitted by Counsel shows that this figure was a typographical error. The number of out-of-court hours listed by Counsel in the voucher actually totals 188.5 hours.

### In-Court Hours[2]

Counsel sought a total of 420.4 in-court hours for a total of $52,550.00. The CJA administrator adjusted these figures to reflect that Counsel incurred only 149.8 hours for a total of $18,725.00. I approve this reduced amount as reasonable.

### Out-of-Court Hours

In the voucher, Counsel sought 188.5 out-of-court hours for a total of $23,562.50. The CJA administrator reviewed the voucher and made substantial changes to these numbers. As noted above, the CJA administrator determined that Counsel had actually incurred 459.1 out-of-court hours, totaling $57,387.50.

Although the vast majority of Counsel's time entries are appropriate, Counsel included two entries that were excessive. On April 28, 2010, Counsel billed 5.7 hours for "Research regarding elements of the offenses charged" and similarly, 1.4 hours for "Research regarding elements of the charged offenses" on June 7, 2010 (a total of 7.1 hours). Given that the two charges in the Superseding Indictment were the same as those in the original Indictment and Counsel previously defended Defendant against those charges during the first trial, Counsel should not have incurred 7.1 hours conducting "research regarding elements of the offenses charged." I recommend that these two entries be reduced to 2.0 hours combined, for a total reduction of 5.1 hours (totaling $637.50).

---

[2] The undersigned defers to the Court Clerk to verify all in-court time and expense allowances.

I find, however, that the remaining out-of-court hours listed in the voucher application are appropriate. Factoring in my deductions, I recommend that Counsel should be paid $56,750.00 for his out-of-court hours.

In making this recommendation, I have been mindful that when considering awards to Counsel under the CJA, courts have long recognized that there is an inherent tension between the policies underlying the CJA: "[o]n the one hand, representing indigent defendants is a form of public service; thus, the [CJA] was never intended to provide full compensation for an attorney's services or to provide fees equal to those charged in private practice. . . . On the other hand, the Act was also intended to provide indigent defendants with meaningful representation by competent counsel". *United States v. Mukhtaar*, 2008 WL 2151798, at * 2 (S.D. N.Y. May 21, 2008) (citations omitted). As other courts have explained, the CJA "was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *United States v. Diaz*, 802 F.Supp. 304, 307 (C.D. Cal. 1992) (quoting *United States v. Carnevale*, 624 F.Supp. 381, 383 (D. R.I. 1985)). In considering these principles with respect to the instant case, I conclude that an award of $56,750.00 for out-of-court hours, is fair, although admittedly not full compensation for Counsel's services.

### Expenses

Counsel sought nothing in "Travel Expenses." Counsel sought $345.56 in "Other Expenses." The CJA administrator slightly reduced the amount of "Other Expenses" to $314.56. I hereby approve this reduced amount.

## CONCLUSION

I commend Counsel for his professionalism and willingness to take this appointment; the undersigned is appreciative of his efforts. Notwithstanding this appreciation, as I have often quoted, when appropriate and in the spirit of the CJA: "What is commendable, however, is not necessarily compensable." *U.S. v. Smith,* 76 F.Supp.2d 767, 769 (S.D. Texas 1999). It is with this sentiment in mind that I recommend that some of the time incurred by Counsel be considered non-reimbursable. To be clear, I am not making this recommendation for a lack of appreciation, rather, it is because the courts have the inherent obligation to ensure that claims for taxpayer provided monies are properly spent.

As I explained above, because the representation in this case was complex, I recommend that Counsel be reimbursed for an amount in excess of the statutory maximum of $9,700.00 in this case. Based upon my review of the time sheets, the June 17, 2011 Letter of Explanation, the docket and filings in this case, I RECOMMEND that Counsel be paid $75,789.56 as fair and final compensation for his work in this case.

In accordance with 28 U.S.C. §636(b)(1), the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file any written objections with the Honorable Donald L. Graham, United States District Judge.

Signed this _1st_ day of September, 2011.

**PETER R. PALERMO**
**SR. UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

    Orlando do Campo, Esq.
    Lucy Lara, CJA administrator